MARTHA BOERSCH (SBN 126569)
mboersch@boerschshapiro.com
BOERSCH SHAPIRO LLP
1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Telephone: (415) 500-6640
Facsimile: (415) 967-3062

Attorneys for Petitioner
HAMID HAYAT

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Respondent/Plaintiff,<br><br>     v.<br><br>HAMID HAYAT,<br><br>                    Petitioner/Defendant. | Case No. 05-cr-0240-GEB-DB<br><br>**DEFENDANT HAMID HAYAT'S POST-HEARING BRIEF REGARDING THE TESTIMONY OF DENNIS RIORDAN AND WAZHMA MOJADDIDI**<br><br>Judge:   Magistrate Judge Deborah Barnes |

**INTRODUCTION**

Two key questions were posed at the recent evidentiary hearing in this matter: (1) was Wahzma Mojaddidi's representation of Hamid Hayat during pretrial and trial proceedings in 2005 and 2006 marred by a conflict of interest because she had ceded control over Hamid's defense to Johnny Griffin, counsel for Umer Hayat, Hamid's father and codefendant; and (2) did Ms. Mojaddidi's inexperience and ignorance of criminal law and procedure result in prejudicial deficiencies in her representation of her client.

At the hearing, attorney Dennis Riordan testified as to statements made to him by Ms. Mojaddidi when both were jointly representing Hamid in post-conviction proceedings in 2006 and 2007. Those statements by Ms. Mojaddidi supported the conclusions that Mr. Griffin exercised decision-making power over strategy and tactics on behalf of both defendants and that Ms. Mojaddidi's multiple errors and omission in her defense of Hamid were due to her inexperience and ignorance of relevant legal principles. During her hearing testimony, Ms. Mojaddidi denied making some, although by no means all, of the statements attributed to her by attorney Riordan.

Were the Court to entirely ignore Mr. Riordan's hearing testimony, the record evidence of the conflict of interest under which Ms. Mojaddidi labored and of her deficient performance would remain overwhelming. Should the Court choose to resolve the question of whose testimony at the hearing was more credible, however, the answer is clear. Ms. Mojaddidi's denials cannot be credited for the following reasons: (1) Ms. Mojaddidi admitted in her hearing testimony that her memory of her representation of Hamid was unreliable; (2) Ms. Mojaddidi has testified falsely under oath, and admittedly attempted to mislead Judge Burrell in a pretrial hearing about her intention to seek a CIPA security clearance; (3) Mr. Riordan's testimony concerning Ms. Mojaddidi's admissions makes sense and is corroborated by the record and other testimonial evidence; (4) Ms. Mojaddidi's hearing testimony concerning conduct at trial was, in specific instances, inherently incredible; and (5) Ms. Mojaddidi has a bias and interest in her testimony.

//

1    DEFENDANT HAMID HAYAT'S POST-HEARING BRIEF REGARDING THE TESTIMONY OF DENNIS RIORDAN AND WAZHMA MOJADDIDI
Case No.: 05-cr-0240-GEB-DB

## ARGUMENT

### 1.  Ms. Mojaddidi's Failure to Remember

Ms. Mojaddidi testified at the hearing that her memory about her representation of Hamid Hayat in 2005 and 2006 was better at the time of her deposition in 2014 than it was at the time of the hearing in February of 2018, and that her memory would have been "even fresher" in 2007 than in 2014. (IV TR 680:9-15)  Indeed, at the time of the 2014 deposition, her memory was poor; a word search of her 2014 deposition reveals that she asserted over 200 times a lack of memory of events in pretrial and trial proceedings (Ex. FFF, *passim*.)[1]

On the other hand, Mr. Riordan's hearing testimony largely tracked his memorialization in September of 2007 of Ms. Mojaddidi's statements made while they were working together in 2006 and 2007. (*See* Exs. A and B.)[2]  Furthermore, Riordan sent that declaration to both Mr. Griffin and Ms. Mojaddidi in September of 2007.  Mr. Griffin replied asking for correction of a detail in the declaration, but Ms. Mojaddidi made no objections to the declaration's averments. (Ex. A at 1:28-2:9)

### 2.  Ms. Mojaddidi's False and Misleading Statements

In her hearing testimony, Ms. Mojaddidi testified with assurance that she had obtained the signature of Hamid on the amended retainer agreement, which evidenced Mr. Griffin's control of the joint team's funds and his financial interest in spending as little money as possible on Hamid's defense.  Under further questioning by petitioner's counsel and after reviewing a 2007 email she sent to Mr. Riordan, however, she conceded that prior testimony was false and that the retainer agreement had never been signed by Hamid. (IV TR 712:7-714:13)

---

[1] Ex. FFF was not moved into evidence at the recent evidentiary hearing, and petitioner has not relied on Mojaddidi's deposition testimony in his principal pleading.  The deposition was taken under oath, however, and Mojaddidi's testimony was subject at that time to cross-examination by the government, so her statements during the deposition can fairly and properly be considered and weighed on the issue of her credibility.

[2] References to exhibit numbers are references to exhibits admitted at the hearing.

2   DEFENDANT HAMID HAYAT'S POST-HEARING BRIEF REGARDING THE TESTIMONY OF DENNIS RIORDAN AND WAZHMA MOJADDIDI
Case No.: 05-cr-0240-GEB-DB

As described at length in Argument VI of petitioner's main brief which accompanies the filing of this memorandum, Judge Burrell expressed great concern and frustration over the failure of Mr. Griffin and Ms. Mojaddidi to obtain security clearances which would have allowed them to participate in CIPA proceedings. (*See* 1/27/06 Hearing RT at 5 ("[O]ne has to wonder why [defense counsel] would accept this case, since to litigate in CIPA proceedings everybody knows, just by reading the law, that you have to have such a clearance.")) In her deposition, Ms. Mojaddidi admitted that she had misled the Court in claiming that she and Mr. Griffin had at least "considered" applying for clearances; in truth, the two had "never intended to get clearances." (Ex. FFF at 293:6-12; *Id.* at 294:11-24.)

### 3.  Mr. Riordan's Testimony Makes Sense and Is Corroborated

Ms. Mojaddidi testified that she did have many post-trial conversations with Riordan about her handling of Hamid's defense (IV TR 694:25-695:11), and that she was truthful during them (*Id.* at 780:3-8). The gist of Mr. Riordan's hearing testimony was that during those conversations Ms. Mojaddidi admitted to him that she was ignorant of the law bearing on many important substantive issues presented by Hamid's prosecution. That ignorance is indisputable: Ms. Mojaddidi had never before represented a defendant in a criminal case, much less one of this complexity. It makes absolute sense that she would have admitted that ignorance when Mr. Riordan questioned her about relatively arcane subjects such as an indigent's defendant's right to auxiliary services despite having privately retained counsel; a defendant's right to Rule 15 depositions; the intricacies of the Speedy Trial Act and CIPA; the ethics of multiple representation; the nature of false confession expert testimony; objections to the government's expert testimony under FRE 704, etc.

Mr. Riordan further testified that Ms. Mojaddidi feared the loss of Mr. Griffin's services if she disagreed with his decision-making. Of course that fear existed. Ms. Mojaddidi herself has testified that she could not have represented Hamid alone and needed to learn "on the job." (IV TR 705:7-9). Who was her "on the job" mentor? Mr. Griffin. For any protegee who is utterly dependent on a mentor, whatever the field of activity, the prospect of the loss of that mentor's

3                    DEFENDANT HAMID HAYAT'S POST-
HEARING BRIEF REGARDING THE
TESTIMONY OF DENNIS RIORDAN AND
WAZHMA MOJADDIDI
Case No.: 05-cr-0240-GEB-DB

guidance would be terrifying. All the more so for a neophyte attorney who has in her hands the freedom of a client whom she is sure is innocent. And it makes perfect sense that a novice would confess that grave fear to an experienced appellate lawyer to whom she was then passing the role of lead counsel for that defendant.

Similarly, it makes sense that Mojaddidi would have admitted to Mr. Riordan that Mr. Griffin had exercised control over all tactical and decision-making for both defendants. That is surely what Mr. Griffin did. That fact is proven by the trial record itself. For example, Ms. Mojaddidi acquiesced with the words of "I agree" to Griffin's statement there would be no pretrial motions filed on behalf of either defendant (7/15/13 RT at 2:1-10), a declaration that obviously stunned the government. Plainly, Ms. Mojaddidi, in one of her first federal court appearances, had absolutely no idea of the disastrous consequences Mr. Griffin's position would have for her client. The same is true of Mr. Griffin's announcement that Ms. Mojaddidi would sacrifice her client's right to cross-examine government witnesses in order to avoid Judge Burrell's appointment of counsel with a security clearance. (1/27/06 RT at 18-20). Appointment cleared counsel clearly would have lent critical support to Hamid's defense. Yet Ms. Mojaddidi not only forsook that benefit, she did it by forfeiting her client's constitutional right to cross-examine government witnesses on crucial factual issues.

Moreover, Ms. Mojaddidi's ceding of control over Hamid's defense to Mr. Griffin is corroborated by the testimony of both James Wedick and Mark Reichel. Wedick testified at the hearing about his observations, at both court proceedings and in defense conferences, that "all decision went through" Mr. Griffin. (III TR 589: 10-18.) And Mr. Reichel's testimony made clear that it was Mr. Griffin, not the "overwhelmed" Ms. Mojaddidi, who made the decision to reject Mr. Reichel's entry into the case (IV TR 513: 4-22-520:14-25), another decision with doleful consequences for Hamid Hayat.

//

//

4       DEFENDANT HAMID HAYAT'S POST-HEARING BRIEF REGARDING THE TESTIMONY OF DENNIS RIORDAN AND WAZHMA MOJADDIDI
Case No.: 05-cr-0240-GEB-DB

### 4.  Mojaddidi's Hearing Testimony Was in Part Inherently Incredible

In her deposition testimony Mojaddidi was asked to explain her failure to investigate and present alibi testimony from Pakistani witnesses.  In their post-trial conferences, she previously had told Mr. Riordan that she knew such evidence existed and that she had wanted to introduce it at trial but, ignorant of Rule 15, she knew of no way to obtain it. (IV TR 788:10-799:2)

At her deposition, Mojaddidi responded that she made the judgment (without interviewing any Pakistani witness) that she would not be able to build an alibi for every day that Hamid had been in Pakistan, and for that reason it would have been futile to pursue an alibi defense. (IV TR 270:5-271:10)  That explanation was no doubt makeshift.  To debunk Hamid's confession and thus the government's theory of the case, alibi witness collectively would only have had to establish that, contrary to his confession, Hamid had never been absent from their presence for the three to six months that the government alleged that he had attended a jihadi camp.

When this contradiction was pointed out to her at the hearing, Mojaddidi offered a new explanation of her failure to investigate an alibi defense:  she saw no need to pay attention to the time periods that Hamid claimed to have attended a camp during his interrogation because she believed the whole "confession" was false. (4 TR 782:2-18: " I don't know why I would pursue something that I knew my client told me wasn't true").  This is baffling.  Ms. Mojaddidi's task at trial was not to ignore details of the confession she did not believe, but to convince jurors that those details were false, as was the entire confession.  Indeed, in her closing argument she focused on Hamid's three to six month claims of camp attendance, contending that the inconsistency between the time periods was a weakness in the government's theory of the case. (4/12/06 RT 4316: 21-23.)[3] Ms. Mojaddidi's newly minted explanation at the hearing for her failure to pursue an alibi defense is simply nonsensical.

The same is true of Ms. Mojaddidi's claim that she and Mr. Griffin made the strategic and tactical decision that it would benefit Hamid to "keep" her client's purported confession in evidence

---

[3] That argument pales in comparison to what competent counsel who had investigated and presented the alibi defense would have been able to argue in Hamid's defense.

5   DEFENDANT HAMID HAYAT'S POST-HEARING BRIEF REGARDING THE TESTIMONY OF DENNIS RIORDAN AND WAZHMA MOJADDIDI
Case No.: 05-cr-0240-GEB-DB

rather than move to exclude it.  (IV TR 744: 4-18)  Petitioner will not belabor a point that is self-evident: Ms. Mohaddidi's head-spinning explanations of her trial conduct, and her demeanor in so testifying, gravely damage her credibility.

### 5.  Mojaddidi's Bias and Interest in her Testimony

Again, no extended argument is needed.  Ms. Mojaddidi firmly believes that Hamid Hayat is innocent of the crimes of which he has been convicted.  The failure to prevent conviction in such a case would weigh heavily on any lawyer.  So too would the profound need to believe that the twenty-four-year sentence Hamid is now serving was not due to the shortcomings of his trial counsel.  That need no doubt prompted, at least in part, Ms. Mojaddidi's deeply dubious explanations of her trial conduct.

Since her first and last sojourn into criminal trial practice, Ms. Mojaddidi has apparently built a well-deserved reputation for dedicated and quality representation of her domestic relations and immigration clients.  Fear of damage to that reputation provides a motive for Ms. Mojaddidi to deflect from herself the chief responsibility for Hamid's wrongful conviction and sentence.  That additional factor weighs in favor of a finding that important portions of her hearing testimony are not credible.

Dated: April 18, 2018                              Respectfully submitted,

                                                  BOERSCH SHAPIRO LLP


                                                   /s/ Martha Boersch
                                                  Martha Boersch

                                                  Attorneys for Defendant
                                                  HAMID HAYAT

DEFENDANT HAMID HAYAT'S POST-HEARING BRIEF REGARDING THE TESTIMONY OF DENNIS RIORDAN AND WAZHMA MOJADDIDI
Case No.: 05-cr-0240-GEB-DB